By the Court,

Nelson, C. J.
The first question presented' is, whether the act of May, 1840, Statutes of 4840, p. 257, for the better [ *682 ] Organization of the criminal courts, in the city of New-York, under which the relator has been appointed associate judge of the general sessions, and which fixes his salary and mode of payment, is unconstitutional and void, not having received the assent of two-thirds of the members elected to each branch, of the legislature, in. pursuance of Art.. 7 § 9, of the constitution.
I had occasion, in the case of The People v. Morris, 13 Wendell, 325, to examine, at large, the effect of this section upon the legislation of the state, concerning our public corporate communities, (our cities and villages,^) and came to the conclusion that they were neither within the object, intent, or mischief of the provision. This has been regarded as the law of thb court ever since, and I see is fully concurred in by the Chancellor, in the late cases of Warner v. Beers, and Bolander v. Stevens, in the court for the correction of errors ; 23 Wendell, 103; and by two other members of the court, who delivered opinions, viz; Senator Verplanck, and President Bradish. I shall not again go over the ground then occupied in arriving at my conclusion; but will state somewhat more distinctly one or two consider rations then noticed.
The territory of the state, for its more convenient jurisdiction and governT ment, has been divided into counties, towns, cities and villages; to each of which, portions (more or less as deemed expedient, and fitted to their condi, tion,) of the civil and political power of the state, has been delegated. They have been organized into separate and distinct communities, or bodies politic,, and are clothed with extensive authority, legislative, executive and judicial, for the purposes of local government. The amount of political authority so, delegated, its distribution and arrangement in the different communities, vary. The powers and privileges conferred upon counties are more limited, and sim-; pie in their operation, than upon the towns; upon villages, than upon thecities ; distributed among each by the legislature, with due regard to the sup-1 posed necessities of the place, and purposes of its separate, organization., But though the amount and distribution differs, the nature of the. [ *683 ] powers conferred on each, and the object *of granting them are! the same. They belong, exclusively to the class that relate to the j general concerns of the people; to their public,, civil and political interests; in a word, to the good government of the place. It is only necessary to ■ look into the internal organization of the counties, towns, cities and villages, ¡ as defined and regulated by law, to confirm the general correctness of these : observations. If will there be seen-also, that in order, to simplify and facili *521 tate the administration and execution of these various powers, counties and towns, as well as the cities and villages, have been constituted bodies corporate, and are expressly invested with all the essential attributes of the same. 1 R. S. 330, 357.
The portion of sovereign authority thus specially conferred upon these several civil divisions of the state is granted by the legislature : 1. By general statutes, applicable in common to all of them. And, 2. By special enactments, granting to each separately. Under the first, counties and towns are erected into distinct political communities. Under the second, cities and villages. Their several powers and privileges are more or less limited or enlarged, defined or undefined, according to the form of the several acts and charters under which they have been organized. But in each a large mass of power has been left to the exercise of the discretion and judgment of the several bodies upon which it has been thrown. Thus, in counties, large discretionary power is invested in the board of supervisors; in towns, in the people in town meeting convened ; in villages, usually in the trustees ; and in cities, in the mayor, aldermen and commonalty. These different bodies of men, from their local situation, were supposed to embody a more intimate and thorough acquaintance with the immediate wants of the people in their ■ several departments, and therefore better enabled to exercise a sounder judgment in the matter, than the legislature ; besides the intrinsic difficulty of carrying the regulation of political power into its remote ramifications. Now, this whole mass of political power, defined and undefined, thus accumulated in several distinct local communities, both by general and special laws, is confessedly under the action and control of the legislature. They may *enlarge, modify, or abrogate at pleasure; [ *684 ] and may do so either by general statutes, operating alike over every part of the state with or without regard to its civil divisions, or by special laws, bearing directly upon any one of them.
The question then is, in what manner must these laws be passed—by a vote of two-thirds, or in the ordinary way? The objection urged is, that public as well as private corporate bodies are embraced within the 7th art. § 9, of the constitution; and hence this whole body of power is exempt from any legislation, except in pursuance of that provision. If this be so, and the doctrine carried out, practically and consistently, there is not a foot of territory within the state but may claim a like exemption. Corporate political power will be found embodied and in full operation over its whole surface. I may say in duplicate force ; for the legislature will meet it both in counties and towns. Corporate privileges have been conferred largely upon these by the same authority, of the samo nature, and for the same objects as in cities and villages. But even laying these out of view, are the hundreds of villages, and others to be yearly added, to be taken out of *522 the ordinary legislation of the state ? Exempt both from special and general enactments with a view to the public good, unless two-thirds of the members concur in the passage of a law ? Take either view, and the restraint^ and embarrassments upon the legislature are such as could never have been anticipated, or intended by the framers of the constitution. Neither could it have entered into their minds that they were making a distinction between cities or villages, and counties or towns, in the mode of enacting laws regulating the public government of the inhabitants thereof.
The distinction between public and private corporations is strongly marked, clear, well known, and understood, from their origin. The one relating exclusively to the public concerns of the corporators, is the embodyment of political power for the purposes of public government; the other, to the private rights and interests of the corporators, enabling them to consolidate capital, and apply it in the various occupations of life, in their aggregate character, in the same way and with the like ease and [ *685 ] facility as in case of a single 'individual. Applying the constitutional provisions to the latter class, I cannot doubt but that the full operation and effect will be yielded to it, intended by the framers. The great evil existing, and deeply felt in the state at the time, as well as the whole history of its adoption by the convention, confirm this view. !
I am satisfied, therefore, that the law of May, 1840, was passed by competent authority; that the tenure of the relator to the office of associate judge of the sessions is valid; and that he is justly entitled to the salary annexed, and would willingly grant the remedy asked for, to enforce payr ment, could I have come to the conclusion that it was appropriate to the case.
But after full consideration I feel persuaded that the relator has a perfect legal remedy ly action which upon settled principles forbids a resort to the writ of mandamus. The 5th section of the act of 1810 provides that the associate judges shall receive each a yearly salary of $2,000, to be paid by the common council of the city in quarterly payments. Here is a legal ■duty enjoined by competent authority, which the corporation are bound to discharge. It is as binding upon them as if entered into under their corporate seal. Full consideration has been rendered in the service of the officer for the liability thus imposed. An action on the case, or assumpsit, will lie for a neglect of corporate duty. This was decided in The Commercial Bank of Buffalo v. Kortright, confirmed in the court for the correction of errors, 20 Wendell, 93; 22 Id. 348. See also 7 Cranch. 299 ; 12 Johns. R. 231; 14 Id. 118. :
There is- also another difficulty, I think, in the way of a remedy by mandamus. Payment is to be made “ out of the city treasury'by quarterly payments.” By the amended charter of 1830, § 18, annual and occasional ap *523 propriations shall be made by proper ordinances of the common council, for every branch and object of city expenditure ; nor shall any money he drawn f rom the city treasury, except the same shall have been previously appropriated to the purpose for which it is drawn. These ordinances making appropriations can only be passed by the common council, while acting in their legislative capacity, subject to the qualified *veto of [ *686 ] the mayor. § 7, 10, 12. The nature of the power necessarily implies the exercise of discretion, however plain the duty may be; and where that exists in respect to the act complained of, this remedy will not lie. If this corporation, like a state, were exempt from suits at law, perhaps no remedy would exist in behalf of the relator, except an appeal to their sense of justice; being, however, like an individual, subject to the ordinary modes of having legal liabilities enforced against them, if they do not choose voluntarily to discharge them, the legal remedy is open to the party.
Motion for peremptory mandamus denied, without costs.