The People, *ex rel.* John Woodworth *vs.* Lorenzo Burrows, comptroller &c.

Previous to the adoption of the present constitution of this state, the legislature had the power to reduce the salary of a judge, during his term of office, after the amount of such salary had been fixed by law.

A statute having that effect does not violate the constitution of the United States, by impairing the obligation of a contract.

Where, upon an application for a mandamus to compel the comptroller to draw his warrant upon the treasurer for the payment of a claim upon the treasury, the comptroller sets up the defense that no appropriation has ever been made by law for the payment of the claim as required by the 8th section of the 7th article of the constitution, this is a conclusive answer to the application.

THIS was an appeal from an order of Justice Wright, made at a special term, denying a motion for a peremptory mandamus. The object of the writ was to compel the comptroller to draw his warrant on the treasurer, in favor of the relator, for the sum of $3781, alleged to be due to him from the state for a portion of his salary as a former justice of the supreme court; and also for $8966 as interest upon the former sum to the 1st day of August, 1857. The relator's claim arose under these circumstances, as set forth in the alternative mandamus. He was appointed a justice of the supreme court on the 28th of March, 1819, during the existence of a law which fixed his salary at the annual sum of $4500, and dur-

ing the existence of a constitution which fixed his term of office during good behavior or until the age of sixty years. This age he attained on the 12th of November, 1828. He continued to discharge the duties of his office until the 7th day of February, 1823, when he was displaced by a justice of the supreme court appointed under the new judicial system inaugurated by the constitution of 1821, which in effect abolished the former court and terminated the official career of the former incumbents, on the appointment of their successors. Before the adoption of this constitution, however, the legislature, by an act passed on the 1st of April, 1820, reduced the annual salaries of justices of the supreme court to $3500, and by an act passed on the 3d of April, 1821, to $3000. The relator claimed that these attempted reductions of his salary were null and void, under that clause of the constitution of the United States which forbids any state to pass any law impairing the obligation of contracts, and therefore sought to recover in this form of proceeding the difference between the sums paid under the later acts of the legislature, and that in force at the time of his original appointment. The comptroller returned to the writ of alternative mandamus, 1. That the relator had been paid his salary in full, and that nothing was due to him. 2. That no appropriation had ever been made by law for the payment of the relator's claim, as required by the 8th section of the 7th article of the constitution. To this return the relator demurred. The court below sustained the demurrer, and denied the motion for a peremptory mandamus, and from the order entered thereon the relator appealed to the general term.

*John Woodworth*, in person, and *J. H. Reynolds*, for the relator.

*Lyman Tremain*, attorney general, for the defendants.

*By the Court*, HOGEBOOM, J. The learned and venerable relator has presented an argument of much ingenuity and

The People v. Burrows.

force in favor of the allowance of a peremptory mandamus, and it would afford the court high gratification, if, in consideration of his eminent and faithful services as a former justice of the supreme court, it were possible, consistently with the rules of law, to award the mandamus in question.

The application is based upon the supposed inability of the legislature to reduce the salary of a judge during his term of office, after the amount of such salary shall have been once fixed by law; and the ground of this alleged inability is, that it violates the constitution of the United States by impairing the obligation of a contract. It is not necessary to deny that the transaction by which a judge accepts the office conferred upon him by an act of the legislature, with a salary attached to the same, and impliedly undertakes the faithful performance of its duties, is a contract, within the meaning of the constitution. The more important question is what is the nature of the contract; what are the conditions embraced in it; and what are the limitations under which it is accepted. The legislature having fixed the compensation, have they not the right to alter it from time to time as the public exigencies require? Is there any absolute stipulation on their part, either express or implied, that they shall not do so? Does not the appointee accept the office with a knowledge of this power, and under an implied consent that its exercise shall be left to the discretion of the legislature? Is the appointment in the nature of a grant upon sufficient consideration, which the legislature cannot afterwards either revoke or modify? Are there in the case vested rights which cannot be interfered with? If the office is conferred during good behavior or for life, or until the incumbent reaches the age of sixty years, is the duration of the term beyond subsequent legislative control? Is the office itself an immortality—to endure forever? And if the legislature, or the people whom they represent, can abolish the office, can they not shorten the term, or curtail the salary? Do all public officers, of every grade and description, hold their places by the same immovable tenure, and at the

same unalterable compensation? If the legislature pass a law that parties in an action shall recover costs after an established rate, may they not alter it afterwards, even after suits are commenced upon the faith and expectation of receiving the stipulated compensation? Concede that after services are actually rendered by a judge under an established salary, he must receive that amount, is it an unbending rule for the future as well as the past? These are all questions bearing more or less upon the case in hand. The question is not without difficulty. The relator has the high authority of an *obiter dictum* of Mr. Justice Story of the supreme court of the United States, in the famous *Dartmouth College case*, in favor of his construction of the inviolability and effect of such a contract; but the case put was merely for the purpose of illustration, and is of no binding force as authority. We do not consider ourselves required to pass upon it now; there being other aspects of the case which in our view control it, and forbid the issuing of a peremptory mandamus. It is worth while, however, to notice that the convention which formed the constitution of the United States, convinced of the existence of legislative power over this subject, or else from motives of extreme caution, saw fit to incorporate in that constitution a clause that the salary of justices of the supreme court shall not be *diminished* during their term of office. And our own constitution contains a clause that it shall neither be increased nor diminished during the same period.

The argument of the relator, so far as it is founded upon the supposed incompetency of the legislature to disturb judicial salaries, on the ground that it would interfere with the independence of the judiciary, strikes us as of less weight. It is aimed not so much at the existence of the power as at the expediency of its exercise. It is an argument more properly addressed to the legislature itself, or to the people in convention, than to the courts. It would scarcely answer, we think, for judicial tribunals to overrule and annul legislative action upon considerations of so general and indefinite a character.

The independence of the judiciary is an object of the highest moment, and worthy of the most studious and patriotic efforts to secure its accomplishment; but so far as it is to be secured by placing judicial salaries above the fluctuations of party or the appeals of partisan demagogues, it must be done, we think, by constitutional provision and not by judicial legislation.

It remains to consider the additional defenses against this application, which are set up in the comptroller's return to the alternative writ, and which, being demurred to for insufficiency, are admitted so far as they contain allegations of fact.

The first is, that the relator's salary has been fully paid. It is difficult to see whether this is intended as an allegation of fact, or of law. If the former, then it negates the averments in the alternative mandamus as to the non-payment of the sums therein mentioned, and is a complete defense to the application. If the latter, then it simply presents the legal question already discussed.

The second defense interposed by the comptroller, is that no appropriation has ever been made by law for the payment of the claim, as required by the 8th section of the 7th article of the constitution. And this we regard as a conclusive answer to the application. The provision is general and imperative. It embraces all cases where money is sought to be drawn from the treasury of the state. It is designed as an absolute and compulsory restriction upon every disbursement from the treasury, except under the sanction of a legislative appropriation, specifying distinctly the object to which it is to be applied; thus imposing a salutary and needed check upon the disbursement of the public funds. We think there can be no doubt that this provision is applicable as well to claims against the state, existing prior to the constitution of 1846, as to those subsequent. The reason of the rule is the same, and the mischiefs of a contrary practice are equal in either case. In the case at bar, conceding the existence of a valid claim against the state, there has been no appropriation by law for its payment, and the comptroller would be guilty of official miscon-

The People *v.* Commissioners of Highways of Seward.

duct, if he should draw a warrant on the treasurer in favor of the applicant.

The order made at the special term, denying a peremptory mandamus, must be affirmed.

[ALBANY GENERAL TERM, May 3, 1858.  *Wright, Gould* and *Hogeboom,* Justices.]