JAMES GREEN *v.* THE MAYOR, ALDERMEN, AND COMMONALTY OF THE CITY OF NEW YORK.

An act of the legislature increasing the salaries of the justices of the district courts of the city of New York creates a valid and binding obligation upon the corporation to pay the increased rate, although no power is in terms conferred by the act to create a fund to meet such increase.

Where a power is given by statute, everything necessary to make it effectual, or to attain the end contemplated, is implied.

An action may be maintained against the corporation of the city of New York to enforce, by judgment and execution, the payment of a legal obligation or liability imposed upon or incurred by it, although no fund or property has been appropriated by law to meet such payment.

The provisions of the city charters of 1830, 1849 and 1857, prohibiting the drawing of any money from the treasury until it has been duly appropriated to the purpose for which it is drawn; also the tax law of 1857, restricting the application of the moneys authorized to be raised by tax, to the objects therein specified; were only designed as a protection against usurpations, improvidences, or dishonesty of corporation officials, and were not intended to prevent the operation of any subsequent act of the legislature.

The tax law of 1857 having authorized a certain sum to be levied for specified purposes, "and for such other expenses as the mayor, &c., of New York may be put to by law," *held*, in an action brought by a justice of a district court whose salary had been subsequently increased by an act of the legislature, that such act imposed such an obligation or expense, and the increased salary might be paid out of any contingent fund provided for, or out of any surplus over the estimated amounts specified in the tax bill as required for a particular purpose.

APPEAL from a judgment of a district court. The facts of the case were, that the plaintiff was a justice of one of the district

courts.   His salary, prior to April 13th, 1857, was at the rate of
$2,000 per year.   At that date the legislature, by statute, (1 Laws
of 1857, p. 725, § 68), raised the salary attached to his office to
$3,000 per year, providing that it should be payable on the first
day of each month out of the city treasury.   The present action
was brought to recover one month's salary at the increased rate.

The defence was, in substance, that there was no money in the
city treasury which could by law be applied to the payment of
the plaintiff's claim.   In support of the defence the particular
facts relied upon are so fully indicated in the points, that it is
considered unnecessary to state them here.

The justice rendered judgment for the plaintiff, and the defend-
ants appealed.

*A. R. Lawrence, jr.*, for the appellants.

I.   The facts set forth in the answer constitute a perfect defence.
1 Laws of 1857, 707.   1.   The respondents are the creatures of
statute, and can only act in the manner prescribed thereby.   *Boon*
v. *City of Utica*, 2 Barb. 104; *Head* v. *Providence Ins. Co.*, 2 Cranch,
127 ; *Dartmouth College* v. *Woodward*, 4 Wheat. 636 ; *Bank of U.
S.* v. *Dandridge*, 12 Ib. 64 ; *Bank of Augusta* v. *Earl*, 13 Pet. 387 ;
*Hodges* v. *City of Buffalo*, 2 Den. 110 ; *Hamershaw* v. *Wolverhamp-
ton Waterworks Co.*, 4 Engl. L. & Eq. R. 426 ; *Farmers' L. & T. Co.*
v. *Carroll*, 5 Barb. 613.   2.   The charter of 1830, (§ 19 ; Davies'
Laws, 202), which was in force until May 1, 1857, prohibited the
respondents from borrowing any money, except in anticipation
of their annual revenue, unless authorized by a special act; and
the charter of 1857, (1 Laws of 1857, p. 885, § 33), which took
effect on the 1st day of May, 1857, contains the same prohibition.
3.   The tax act of 1857 only authorized the supervisors of the
county of New York to raise an amount of money sufficient to
pay the salaries of officers, payable out of the city treasury, at
the rates allowed by law at that time.   1 Laws of 1857, 159.   And
section 2 of that act prohibits the application of the sums therein
authorized to be raised, to any other objects or purposes than
those for which the supervisors are empowered to raise the same.

Clearly, under this act, neither the respondents nor the supervisors can raise any money to pay the appellant the increase in his salary demanded in the complaint.  4. The act of April 13, 1857, (1 Laws of 1857, p. 725, § 60), gives no power to the respondents by loan, or to the supervisors by tax, to raise any amount to meet the increase in the salaries of the justices of the district courts made by that act; and no other acts authorized such loan, or tax; so that the legislature provided no means to enable the respondents to meet the same.  5. The whole revenue of the respondents, derived from other sources than that of taxation, is pledged by law for the permanent debt of the respondents.  Davies' Laws, 891.  6. There is no appropriation, nor is there any money in their treasury, out of which they can pay the appellant the increase in his salary.  The charters of 1830–1849 provide that no money shall be drawn from the treasury until it has been duly appropriated to the purpose for which it is drawn.  Id. 202, § 18; 205–7, §§ 7, 19.  And these provisions are continued in force by the charter of 1857.  1 Laws of 1857, p. 884, § 31.

II. A payment of the respondent's demand out of any of the moneys authorized to be raised by the supervisors by the act of March 5, 1857, would subject the officers making the same to the penalties imposed by section 40 of the charter of 1857.  1 Laws of 1857, 888.

III. The inability of the appellants to pay the respondent has not arisen from any neglect of duty on their part, or on that of their officers.

IV. The legislature having neglected to provide the appellants with means to pay the increase in the salary of the respondent, their property cannot now be taken under execution for the satisfaction of such claim.

*Wessell S. Smith*, for the respondent.

I. It is admitted that the respondent, at the time of the commencement of this action, was a justice of a district court; that his salary, as such, was at the rate of $2,000 per year up to April

13, 1857, when it was increased by an act of the legislature to $3,000 per year. This salary is made payable, on the first day of each and every month, out of the city treasury, and took effect immediately. 1 Laws of 1857, p. 725, § 68. It follows that the respondent was entitled to the salary provided by law, viz., at the rate of $2,000 per year up to 13th April, 1857, and after that at the rate of $3,000 per year, payable monthly, as demanded in the complaint; and, being thus entitled, he has a remedy by action if payment is refused, and no other. *Lynch* v. *Mayor*, 25 Wend. 680, and cases cited.

II. That the legislature had the authority to pass this act increasing the salaries of these justices, and making the same payable out of the city treasury, is not disputed. *People* v. *Warner*, 7 Hill, 81, 82; *S. C.* in error, 2 Denio, 272, 281; *Conner* v. *Mayor*, 1 Seld. 285, 296.

III. But admitting that the comptroller made the estimate; that the common council passed the ordinances and resolution, and the legislature passed the tax bill, as stated in the answer; then we say, 1, We are to be governed by the act of the legislature alone, and have a right to refer to it on this appeal as to what was intended, without regard to averments in the answer as to its construction, and for the obvious reason, 2, That neither the estimate of the comptroller, nor the ordinance of the common council, are binding on the legislature, for the common council may alter the estimate of the comptroller, as has been done recently, and the legislature may alter the estimate of the common council, or refuse to pass them entirely; 3, It follows that, as the act of the legislature was binding, we cannot go behind it to see upon what basis the estimates were made.

IV. It appears, upon the face of the answer, that it is not true that no appropriation has been made, out of which the claim of the respondent could be paid. 1. There is the appropriation of $412,500, which is general, to pay salaries from the city treasury, without any reference to the estimates of the comptroller, and it is not pretended that this sum was exhausted. Until that was done, this allegation forms no defence. Ordinances 1856; 1 Laws

1857, 159. 2. Then there are the items of county and city contingencies, $80,000, which were intended to apply to just such a case as the present. Ib.; *Sun Mutual Ins. Co.* v. *Mayor*, *&c.*, 3 Sandf. 10, 14. 3. Then comes the provision, that in addition to the items mentioned in the ordinances, " And for such other expenses as the mayor, aldermen, &c., may be put to by law." Ib. 4. It therefore appears that the necessary appropriation has been made. It is virtually admitted it has been received; and there is nothing to show but that the money is in the treasury now : certainly there is no allegation that it has been exhausted.

V. The allegation that the defendants are not authorized to raise the same by loan, is equally unfounded. 1. They are authorized to raise the same by loan, in anticipation of revenue, without permission of the legislature. Laws 1830, p. 128, §§ 18, 19; 1857, p. 884, §§ 31–33. 2. There is nothing in the answer to show that the defendants had no revenue, and that they could not make a loan in anticipation thereof; on the contrary, it appears that they have revenue; and we instance, in addition, fees, &c., received from these courts. Webster's Dict.; Wharton's Law Lex.; Bouvier's Law Dict., tit. Revenue.

VI. They also had authority to raise it by tax under the act of 1857, as above shown. 1 Laws of 1857, 157.

VII. The legislature, by the act reorganizing these courts and giving the increase of salary to the judges, (as they had a perfect right to do), gave the right to the defendants, and imposed on them the duty, to provide the necessary means for the payment thereof. *Stief* v. *Hart*, 1 Comst. 20, 30; 1 Kent's Com. (5th ed.) 464. 1. They had the right to raise this money either by loan or tax, as above shown. 2. The act organizing these courts removes the restriction on defendants, if any was imposed. Laws of 1857, pp. 707, 729, §§ 81, 82. 3. The legislature having imposed upon the defendants the duty of paying this increased salary, they gave them all the authority necessary for the performance of the same. Ib.

VIII. But, admitting the facts stated in the answer, it forms no defence against this claim. 1. The plaintiff was entitled to

the amount claimed for his salary, as provided by law and admitted in his answer; and, if not paid when due, he had a right to his action, and had no other remedy. *Lynch* v. *Mayor*, 25 Wend. 680, and cases cited. 2. No restrictions are contained in the charter, or laws which have been adopted since, altering the principles of that decision. 3. No omission of the legislature, the common council, or their financial officer, could be any defence against the plaintiff. 4. It is not shown that the real estate, rents, &c., of defendants are pledged by law to the payment of the public debt; but if it was, it is no defence, because, in such case the judgment of the plaintiff would be a lien subordinate to the rights of the public creditor.

IX. The act of April 13, 1857, is not obnoxious to the objection that it is a local or private act, and contains more than one subject not embraced in its title, and therefore unconstitutional. Const., art. 3, § 13; 1 Laws 1857, 707; 5 Sandf. 10; 1 Seld. 285, 293–7; 15 Barb. 657; Deb. on Const., Atlas ed. 176, Arg. ed. 134.

X. If the judgment is reversed, it presents this curious anomaly: 1. The plaintiff is entitled to his claim as demanded. 2. That he had a right to bring this action for the same against the defendants, who are liable; and which was his only remedy. 3. Yet he is turned out of court, and made to pay a bill of costs, because the legislature, or common council, have omitted something they should have done, but over which he had no control.

By the Court, BRADY, J.—In this case, the theory of the defence is, that the corporation, having no funds to pay the plaintiff's claim, and no power to raise it *in præsenti*, they are not liable. That the legislature has imposed upon them a pecuniary obligation without giving them the means of discharging it, and that compulsory process should not, therefore, be issued against them.

The power of the legislature to increase the salaries of the justices of the district courts was not questioned on the argument. It could not well be. *People* v. *Warner*, 7 Hill, 81, 82; *S. C.* in error, 2 Denio, 272, 281; *Conner* v. *The Mayor*, 1 Sel. 285, 296. The act, therefore, providing for such increase was

valid, and the obligation imposed on the defendants binding. Having arrived at this result, the question which presents itself is whether, in answer to the obligation thus imposed and sought to be enforced, the defendants have presented a legal defence? I think not. Assuming the fact to be as alleged in the answer, that the defendants had no fund out of which the increase could be paid; and admitting that the act increasing the salary did not, by its own terms, confer any power to create a fund to meet such increase, that fact does not discharge the defendants *from liability.* When a power is given by statute, everything necessary to make it effectual, or requisite to attain the end, is implied. *Stief* v. *Hart*, 1 Com. 30; 1 Kent. Com. (5th ed.) 464. So, where the law commands a thing to be done, it authorizes the performance of whatever may be necessary for executing its commands. *Foliamb's case*, 5 Coke, 116. The defendants, however, say that, by the charter of 1857 (Laws 1857, Vol. 1, p. 885,) they are prohibited from borrowing any money, except in anticipation of the revenue of the year in which such loan shall be made, unless authorized by a special act of the legislature. That the tax bill of 1857 (Laws 1857, Vol. 1, p. 59,) only authorized the supervisors of the county of New York to raise an amount of money for salaries, sufficient to pay the salaries of officers. payable out of the city treasury, *at the rates allowed* by law at. the time of the passage of the act, and which did not embrace the increased salary of the plaintiff; that the second section of the tax bill (*supra*) prohibited the application of the sums thereby to be raised, to any other objects or purposes than those for which the supervisors were empowered to raise the same; that the whole revenue of the defendants, derived from other sources than that of *taxation*, is pledged by law for their permanent debt; (Davies' Laws, 891); that the charters of 1830–1849 provide that no money shall be drawn from the treasury until it has been duly appropriated to the purpose for which it is drawn; (Davies' Laws, pp. 202, 205, 207); that these provisions are continued in force by the charter of 1857, (§ 31), and that a payment by the defendants, out of the moneys authorized to be

raised by the supervisors by act of March, 1857, would subject the officers making the same to the penalties imposed by sec. 40 of the charter of 1857. This presents an array of statutes in supposed opposition to the right of the plaintiff to insist upon his salary; but I think they can have no such effect. They were all designed to protect the people of the city and county of New York from the usurpations, improvidences, or dishonesty of officers of the corporation who might feel disposed to be derelict, and for no other purpose. They are guards thrown around the property of the people, but never were designed or intended to prevent the operation of a subsequent statute, passed, it must be presumed, with full knowledge of their existence and purposes. The legislature having the power, then, to increase the salaries of the justices, and thus to impose upon the defendants a burden, and having done so, all the elements exist which entitle the plaintiff to judgment. The defendants' liability is fixed by competent authority, and they are subject to the ordinary modes of having legal liabilities enforced. *The People, &c.*, v. *The Mayor*, *&c.*, 25 Wend. 680. I am aware that Judge INGRAHAM has expressed a different view of this question; but, although I entertain profound respect for his opinion, I am constrained to differ from him. I think the liability of the defendants beyond question, and that they are subject to all the legal consequences of that liability. It may be said, perhaps with propriety, that the defendants, though liable, are powerless, and that the plaintiff should be restrained from enforcing his judgment until the time arrives at which they can provide for the emergency by the usual estimate and tax bill, but we are not called upon to decide such a proposition, or to give it consideration.

The conclusion thus expressed is predicated upon the truth of the averment, that the defendants have no funds out of which the plaintiff's claim can be paid, and no power to raise money for that purpose. Is this true? On reference to tax bill of 1857, (*supra*), authorizing the supervisors to raise money by tax, it will be perceived that there are two items for contingencies— one for the county of $80,000, and one for the city of $40,000,

and that these form a part of the sum of $3,612,682 to be levied not only for the objects and purposes enumerated, but for "such other expenses as the mayor, aldermen, and commonalty of the city of New York may be put to by law." And it appears, by the defendants' answer, that the items of the bill compose an estimate of the probable amount of tax required for that year, and furnished by the comptroller of the city of New York, as required by ordinance of May 30, 1849. The defendants do not aver that they have no property out of which the plaintiff's claim could be made, but, reposing upon the disabilities created by the statutes mentioned, say, that they have no money in the treasury out of which they are authorized to pay. They do not allege that the county and city contingencies are either exhausted or will be required for purposes other than salaries; they assume that the sum of $412,500, levied for salaries, and which will be required for that purpose, without reference to the increase of the salaries of the justices, is the only fund appropriated which can be touched to pay the plaintiff's claim. We have seen that the tax bill of 1857 appropriates the sum of $3,612,682 to the payment of certain sums, estimated to be necessary for certain purposes, and also for such other expenses as the defendants may be put to by law; and we have also seen that the increased salary of the plaintiff was an expense to which the defendants were put by law. Can there be a doubt that the act of the legislature, increasing the plaintiff's salary, is an appropriation of the defendants' funds for that purpose, or that the defendants, under the general power to pay "such other expenses as they may be put to by law," would have the power out of any contingent fund, or any surplus over the estimates, to pay the plaintiff? I think clearly not; and that there is no such contingent fund, and that there was or would be no such surplus, does not appear. It is my opinion, for these reasons, that the averment of the defendants, that they have no fund out of which they are authorized to pay the plaintiff, is not sustained, and that the judgment, on that ground, as well as upon the question first considered, should be affirmed.           Judgment affirmed.