## SUPREME COURT.

The People *ex rel.* WILLIAM BALDWIN and JOHN M. JAYCOX agt. ROBERT T. HAWS, comptroller of the city of New York.

The *fourth section* of the act passed in April, 1860, (*Sess. Laws*, 1860, *p*. 772,) to facilitate the taking of lands and building gate-houses, &c. in the city of New York, and which provides for an *arbitration*, and directs that it shall be held for the purpose of adjusting and determining the damages which the contractors, to whom the gate-houses were awarded, might be equitably entitled to recover of the city of New York, and if an award is made in their favor, directs the comptroller to pay the same, is *unconstitutional*.

When the law *compels* a party to *arbitrate* upon a claim, which properly should be the subject of an action, without his assent, such law deprives him of the right which is secured by the constitution, of a trial according to the course of the common law.

If this section was not unconstitutional, the provision, that if such report (of arbitrators) should be in favor of the party claiming such damages, such party should recover the same, &c., would give a remedy by *action on the award*, which would preclude a remedy by *mandamus*.

*New York General Term, June,* 1862.
*Before* INGRAHAM, LEONARD and CLERKE, *Justices.*

LUTHER R. MARSH, *for the relators.*
HENRY H. ANDERSON, *for the comptroller.*

By the court, INGRAHAM, P. Justice.   The relators apply for a mandamus against the comptroller, to draw his warrant in their favor, for an award made against the corporation for damages sustained by the relators in consequence of the refusal of the common council to award them a contract for building a gate-house at the new reservoir.

This claim arises under the provisions of the 4th section of the act ·passed to facilitate the taking of lands and building such gate-house, &c., passed in April, 1860, (*Laws of* 1860, *p.* 772.)   This section provided, among other things, " that for the purpose of adjusting and determining the damages that the contractors to whom the gate-houses and aqueducts, &c. were awarded by the Croton aqueduct board, &c., which they may be equitably entitled to recover of the city of New York, the same may be ascertained by arbitrators, one to be chosen by the mayor, one by the parties claiming such damages, and the third by the two arbitrators chosen as aforesaid ;" and the same section, after directing the arbitrators to be sworn, to hear the case, and to make their award and file the same with the county clerk, allows an order of confirmation to be entered of course, and then adds : " If such report shall be in favor of the party claiming damages, such party shall be entitled to recover the same, and, upon presenting a certified copy of such report and order of confirmation to the comptroller of the city of New York, it shall be the duty of said comptroller to draw his warrant for the amount thereof, and to pay the same."

In pursuance of this act, three arbitrators were appointed in the mode directed by the statute.   These arbitrators proceeded to hear the case.   No notice of the hearing was served on the counsel of the corporation, and no appearance was made by him on behalf of the city.   Notice, however, was served on the mayor and comptroller.

On such hearing the arbitrators awarded as damages, to

the relators, sixty-one thousand eight hundred and twenty-one dollars against the city of New York.

The report was filed, order of confirmation entered, a copy of the report and order served on the comptroller; a demand made of him for a warrant therefor, which he refused, and the relators moved, at a special term, for a mandamus. Which motion was denied.

The relators appealed from such order. In order rightly to understand the questions presented in this case, it is proper to remember that this claim is not one against the county, nor one which the supervisors have anything to do with, either as regards auditing or paying the same.

The contract was made, if made at all, in regard to property belonging to the city of New York; was under the direction and control of the Croton aqueduct department, a branch of the city government, and was to be paid for, when the work was completed, out of the city treasury. This was expressly held in regard to the work in question. The chancellor says the dam and the aqueduct must be considered the property of the defendants, and, as the owner of such premises, the corporation of New York is properly answerable for the damage which others have sustained thereby—and that case (*Bailey* agt. *The Mayor of New York*, 2 *Denio*, 433) was decided upon the ground that this work and the lands taken therefor belonged to the corporation of the city, and as the owners of property they were liable for any evils resulting from its improper construction or use.

The present claim is one of a similar character, arising out of an alleged contract for work on another portion of the aqueduct, to which the same principles are to be applied.

It is not material, in the examination of the questions which affect this appeal, to decide whether the relators had, by virtue of their offers to the Croton aqueduct board,

to do the work on the reservoir, acquired any rights which entitled them to damages against the city.

Whatever claim of that kind they might have, could properly be enforced by an action.

The questions material to the decision of the present appeal are, 1st. Whether the statute providing for the appointment of appraisers was legal; and 2d. If it was, whether the remedy by mandamus is proper.

The statute, which provided for the arbitration, directs that it shall be held for the purpose of adjusting and determining the damages which the contractors to whom the gate-houses were awarded might be equitably entitled to recover of the city of New York, and if an award is made in their favor, directs the comptroller to pay the same.

It must be taken for granted that the intent of the statute was that the comptroller should pay the same out of the city treasury, although the provisions of law are such that he has not the power, without the concurrence of other officers, to draw from the treasury any moneys whatever. No one would suppose for a moment that the intent of the legislature was to compel the comptroller to pay such claim out of his own means, and yet, in fact, such a provision would be no more in opposition to the fundamental law of the state than to compel the corporation, by an act of the legislature, to pay a claim for damages for which they deny any liability, and which has not been adjudged by a legal tribunal to be a valid one.

It is contended by the relators, that questions of a similar character have been adjudged in their favor both in the supreme court and the court of appeals, and in support of these views they cite the case of *The Town of Guilford* agt. *Supervisors of Chenango*, (18 *Barb.*, 614, *and* 3 *Kern.*, 143,) and the case of *McSpedon & Baker* agt. *Haws, comptroller*, (21 *How.*, 178.)

But these cases, and many others of a similar character, which might have been cited, related not to the right or

power of the legislature to compel an individual or corporation to pay a debt or claim, but to the power of the legislature to raise money by tax, and apply such money, when so raised, to the payment thereof. We could not, under the decisions of the courts on this point, made in these and other cases, now hold that the legislature had not authority to impose a tax to pay any claim, or to pay it out of the state treasury, and for this purpose to impose a tax upon the property of the whole state, or any portion of the state. This was fully settled in *The People* agt. *Mayor, &c. of Brooklyn,* (4 *Coms.,* 419,) but neither that case nor the case from 3 *Kernan,* 143, in any manner, gave a warrant for the opinion that the legislature had a right to direct a municipal corporation to pay a claim for damage for breach of a contract out of the funds or property of such corporation, without a submission of such claims to a judicial tribunal. In the case last cited, DENIO, J., says: " The proceeding * * * is not aimed at, and cannot affect the corporate rights or corporate property in the town." Here, however, the act of 1860 directs that the claim of the relators, when adjusted by the arbitrators, shall be paid by the comptroller.

This is in direct violation of those provisions of the constitution, which say :

1. That no member of the state shall be deprived of any of the rights secured to a citizen, unless by the law of the land. 2. No person shall be deprived of life, liberty, or property, without due process of law. (*Constitution of State, secs. 1 and 6; 1 R. S., p. 51.*)

Both of these sections have been the subject of examination by the supreme court. (*Taylor* agt. *Porter,* 4 *Hill R.,* 138.) BRONSON, J., says: " The words of the law of the land, as here used, do not mean a statute passed for the purpose of working the wrong. That construction would render the restriction absolutely nugatory, and turn this part of the constitution into mere nonsense." " The mean-

ing of this section seems to be, that no member of the state shall be deprived of any of his rights, unless the matter shall be adjudged against him upon trial had according to the course of the common law. It must be ascertained judicially that he has forfeited his privileges, or that some one else has a superior title to the property he possesses, before either of them can be taken from him. It cannot be done by mere legislation." And the words " by due process of law" are defined in the same case as not to mean less " than a prosecution or suit instituted and conducted according to the prescribed forms for ascertaining guilt or determining the title to property ;" and again, " when one man wants the property of another, I mean to say that the legislature cannot aid him in making the acquisition." The same doctrines were repeated by COMSTOCK, J., in *Wyne-hamer* agt. *The People*, (3 *Kern.*, 378, 393, *and* 12 *How.*, 238.)

If, by " due process of law," and by " the law of the land," is meant a suit instituted and conducted according to the course of the common law, then the legislature, by the passage of the act referring to arbitrators to decide the amount of damages the relators had sustained, deprived the corporation of a right to a trial according to the course of common law, and the provision referred to was in conflict with the constitution.

The conflict which has arisen in this case, as to who was appointed arbitrator by the mayor, shows the danger of selecting such a mode of trial which was not subject to any court, where such a proceeding could be controlled and questions of this character adjudicated. I do not deem it necessary to decide, even if there was sufficient evidence for that purpose, which was the arbitrator properly appointed.

Where parties agree to submit to arbitration any matters in controversy, such arbitration can be sustained, because it is the voluntary act of the parties ; but when the law compels a party to arbitrate upon a claim, which

properly should be the subject of an action, without his assent, such law deprives him of the right which is secured by the constitution, of a trial according to the course of the common law.

If, however, the views above expressed, as to the constitutionality of this section, are doubtful, still I am satisfied the remedy sought in this case is not the proper one. The same section says that if such report should be in favor of the party claiming such damages, such party should recover the same, &c. The remedy, then, could be enforced by an action on the award, if the same was valid. Where such a remedy exists, a party has no right to have a writ of mandamus. It is said the comptroller is directed to pay the amount. But with the knowledge that the moneys in the city treasury can only be used for the specific purposes to which they are appropriated; that other officers besides the comptroller must unite with him in the payment of moneys belonging to the corporation, and with the doubt, at least, which exists as to the validity of this statute, I think it is clear that the application for a mandamus ought not to be granted. (*See People* agt. *Brooklyn*, 1 *Wend.*, 318; *People* agt. *Judges of Oneida*, 21 *Wend.*, 20; *People* agt. *Supervisors of Chenango Co.*, 11 *N. Y. Rep.*, 563; *People* agt. *Burrows*, 27 *Barb.*, 89.)

The various cases referred to by the relator's counsel, on this point, were mainly cases in which the duty of auditing and paying depended on the action of the board of supervisors, and not of a corporation. The board of supervisors can be compelled in no other way, and where the application is to audit an account, or pay when the amount has been audited, this remedy is proper. The cases cited from 23 *Wend.*, 459; 10 *Wend.*, 393, as to corporations, were reviewed and disapproved of in *The People* agt. *Supervisors of Chenango Co.*, (1 *Kern.*, 563.)

The case of *Green* agt. *The Mayor, &c.*, (2 *Hilton*, 203,) is an authority for nothing except that a judgment may be

recovered against the corporation for a claim for which no money has been appropriated, and if it has any relation to this case, it is to show that the remedy by mandamus is not proper.

The order appealed from must be affirmed, with costs.

LEONARD and CLERKE, J. J., concurred.