STATE EX REL. JOURNAL PUBLISHING COMPANY, APPELLANT, *v.* E. A. KENNEY, AUDITOR, RESPONDENT.

MANDAMUS — *Constitutional law — Approp.iations — St te officers.* — The relator applied for a writ of mandate to compel the State auditor to draw his warrant for the payment of an account due it for public printing, under section 1636 of the fifth division of the Compiled Statutes, which provides that the governor and auditor shall examine the "itemized account" of the contractor, which shall be rendered "once in each month," and "if they find it to be correct and in accordance with the provisions of this chapter, the auditor shall draw his warrant on the territorial treasurer for the payment of the same." *Held*, that under section 34, article v. of the Constitution, which provides that "no money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the public officer in pursuance thereof, except interest on the public debt" and section 10, article xii., which provides that "no money shall be drawn from the treasury but in pursuance of specific appropriations made by law," the relator was not entitled to the relief demanded in the absence of a lawful appropriation. *Held, also,* that the relator had a plain, speedy, and adequate remedy in an application to the legislative assembly for an appropriation to pay the claim.

CONTRACTS OF A STATE. — The executory contracts of a State, as its promises to pay for services rendered under agreements authorized by law, have no legal obligation. They depend upon good faith for their performance, and cannot be enforced at law. (Cases of *Langford* v. *King*, 1 Mont. 38, cited; *Fisk* v. *Cuthbert*, 2 Mont. 593, distinguished.)

*Appeal from First Judicial District, Lewis and Clarke County.*

Relator's petition for a writ of mandate was denied by HUNT, J.

*McCutcheon & McIntyre,* for Appellant.

The court below based its action upon the fact that the last legislature failed to make any appropriation, and that this case falls within section 34, article v. of the Constitution. In this we think the court erred. It is the plain duty of the auditor to issue a warrant to the relator for the performance of this work. (Comp. Stats. p. 1094, § 1636; p. 960, § 1122.) Appellant's contract is executed in pursuance of the statute. (Comp. Stats. p. 1091, § 1626.) The mine inspector is an officer of the Territory and of the State, and his report is required to be printed as are other reports of officers. (16th Sess. Laws, p. 164, § 13.) Relator has performed his part of the contract and has rendered its account as provided by law: it thereupon became the duty of the auditor to draw his warrant on the State treasurer for the payment of the same. (Comp. Stats. p. 1094, § 1636.) It will be observed that this warrant is not *in payment* but *for the payment* of the work done. The printing law is a law of the State. (Const. Schedule, § 1.) This contract has been assumed by the State. (Const. Schedule, § 9.) If the territorial auditor could not legally refuse to drawn his warrant when we were still under the territorial form of government, the State auditor cannot. Compiled Statutes, page 1094, section 1636, is mandatory, and under the provisions of the constitution, *supra,* is as binding on the State auditor as it formerly was on the territorial auditor. It is clearly proper to draw warrants even when there are no funds in the treasury, otherwise the Compiled Statutes, page 960, section 1126, and page 961, section 1129, would be nugatory. The duty of the State auditor to draw this warrant is entirely independent of the fact whether there is any money in the State treasury, or whether there has been an appropriation of the same to the payment of this debt or not. The auditor does not pay the claim — he simply audits or liquidates it. *People* v. *Secretary of State,* 58 Ill. 90, seems to us to be conclusive of this case. Illinois has the same constitutional provision as Montana, that no funds shall be drawn out of the State treasury except on appropriations made by law, and upon warrants drawn by the proper officer. (Illinois Const. art. iv. § 17; Stimson's Am. Stat. Law,

p. 81, § 320.)  Section 34, article v. of the Constitution is clearly a limitation upon the power of the State treasurer and not upon the auditor.  It simply means that before the treasurer can act, two things must have occurred : *First,* an appropriation ; *second,* a warrant drawn by the proper officer in pursuance of such appropriation.  It has nothing to do with the auditor's statutory duty to audit claim against the State.  In the case at bar, relator's compensation is just as certain as if the amount had been inserted in the contract.  Compiled Statutes, page 1094, section 1635, specifies the rates for printing and how the compensation is to be ascertained.  The maxim *certum est,* etc., is therefore applicable.  But even if it were not fixed the auditor could not refuse, therefore, to audit the claim.  (*Fisk* v. *Cuthbert,* 2 Mont. 599.)  Appellant claims that it is entitled to its warrant under the statute irrespective of the fact of any appropriation having been made.  If an appropriation is essential to entitle it to receive the money for its warrant, that question will properly come up on the refusal of the treasurer to pay, exactly as was done in the case of *State ex rel. Rotwitt* v. *Hickman,* decided at the January term of this court.  (*Brown* v. *Fleischner,* 4 Or. 147, 148.)  Compiled Statutes, page 1094, section 1636, is itself an appropriation.  It directs the payment or the application of moneys to a certain use, to carry out a public object, which is the meaning of the word "appropriation" as defined by lexicographers.  Money drawn under its provisions would be paid in pursuance to law, which is also the meaning of the word "appropriation." (*McCauley* v. *Brooks,* 16 Cal. 29.)

*Henri J. Haskell,* Attorney-General, for Respondent.

It appears by the pleadings in this case that the petitioner herein has a contract with the State of Montana to do all of its printing at a specified rate, but it does not appear therein when the respondent shall pay.  We take the ground that the petition must state, and that the petitioner must show, that there has been an appropriation made by law for the payment of this claim, and as well the warrant when drawn.  In support of this proposition we refer the court to section 34, article v. of the Constitution, which reads as follows:  "No money shall be paid

out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof, except interest on the public debt." The appellant contends: (1) That an appropriation is not a prerequisite to authorize the auditor to draw his warrant; (2) that the drawing of the warrant is simply evidence of the fact that the claim is audited; (3) that the inhibition in section 34 applies solely to the State treasurer and not to the auditor; (4) that a failure of the auditor to draw his warrant renders nugatory sections 1126 and 1129, fifth division of the Compiled Statutes. We construe the words "in pursuance thereof" in section 34 to mean "in accordance with such appropriation"; therefore the auditor would be as strongly inhibited from drawing a warrant for any proper claim presented to him until the legislature had made a specific appropriation, as he is now. Webster bears us out fully in our construction of the words above quoted. He defines "pursuance": "A following out or after"—"in accordance with." "Done in consequence or prosecution of anything." Therefore the section would read: "No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in accordance with such appropriation." As to the second proposition of the appellant, we contend that it is not well taken, and considering the fact that what he terms "simply evidence of the fact that the claim is audited," is worth one hundred cents on the dollar, is an order on the State treasurer, and draws six per cent interest if there is no money in the treasury to pay the same. It is apparent that such "evidence" is a settlement of the claim, so far as the auditor is concerned, and that it being a promise to pay, is negotiable. The State accepts "evidence" like this in payment of taxes. (§ 1126, fifth div. Comp. Stats.) A warrant is in fact "an order on the State treasurer to pay a given sum out of the money in the State treasury not otherwise appropriated." (§ 1125 of said laws.) The warrant shows upon its face that the money to be paid thereon has been duly appropriated for that purpose. Our construction of section 34 answers the third as well as the first proposition of the appellant. Assuming that the petition must show that there has been an appropriation made by law, and that our construction of section 34 is

the correct rule, and there having been no appropriation made by law for the payment of appellant's claim, the auditor has no authority to draw a warrant therefor. (*Redding* v. *Bell,* 4 Cal. 333; *Myers* v. *English,* 9 Cal. 350.) The provisions of the constitution of the State of California at that time, concerning public moneys, was not unlike ours at the present time, and reads, "No money shall be drawn from the treasury but in consequence of appropriations made by law." (See, also, *People* v. *Burrows,* 27 Barb. 93; *People* v. *Tremain,* 29 Barb. 98; *Brown* v. *Fleischner,* 4 Or. 135.) We contend that in the absence of section 34, article v. of the Constitution, this appellant could not obtain the writ on his petition, for the reason that the inhibition on the State treasurer contained in article xli., as to payments of State funds, is as binding upon the auditor as upon the treasurer. We quote section 10 of article xii.: "All taxes levied for State purposes shall be paid into the State treasury, and no money shall be drawn from the treasury but in pursuance of specific appropriations made by law." For a construction of this section we refer the court to the case of *State* v. *Wallichs,* 12 Neb. 409. (See, also, *State* v. *Wallichs,* 15 Neb. 458, 609.) An appropriation cannot be implied. (*State* v. *Wallichs,* 16 Neb. 679.) Without an appropriation by the legislature, no funds once in the State treasury can be drawn out. (*State* v. *Liedtke,* 9 Neb. 468; *State* v. *Babcock,* 17 Neb. 613.) By a specific appropriation we understand an act by which a named sum of money has been set apart in the treasury and devoted to the payment of a particular claim or demand. (*Stratton* v. *Green,* 45 Cal. 151; *Butler* v. *Bates,* 7 Cal. 138.) It is not contended on the part of the respondent that the State of Montana has not assumed this contract. The State accepted it with the condition that it would pay the sums found due appellant under the contract whenever the legislature would make an appropriation. This provision is applicable as well to claims against the State, existing prior to the constitution, as to those subsequent. (*Swann* v. *Buck,* 40 Miss. 299; *Hunsaker* v. *Borden,* 5 Cal. 290.)

BLAKE, C. J.— This is an appeal from the order of the court below, denying the application of the relator for a writ of man-

date, to compel the auditor of the State to draw his warrant on the treasurer of the State in payment of an account. The affidavit which accompanies the application is not controverted, and recites the following facts: The Journal Publishing Company entered March 11, 1889, into a contract with the Territory of Montana to do all the printing therefor which is required by law. The account of the printing and advertising done by this company for the inspector of mines, an officer of the State, under the contract, amounted to the sum of $389.39, and was presented March 1, 1890, to Kenney, the auditor of the State. This account was examined by the governor and auditor of the State, and found to be correct March 4, 1890. Afterwards a demand was made of the auditor that he should draw his warrant on the treasurer of the State for the amount of the account in favor of the company, and the auditor refused to perform this act. Upon the hearing of the application it was adjudged that the writ of mandate be denied, upon the ground that the foregoing facts do not entitle the relator to this remedy.

It is conceded that the claim of the relator against the State is valid, and the defense of the respondent is based upon the failure of the legislature to make an appropriation for its payment.

The provisions of the constitution which are applicable to this controversy, declare that "no money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the public officer in pursuance thereof, except interest on the public debt." (§ 34, art. v.) "No money shall be drawn from the treasury but in pursuance of specific appropriations made by law." (§ 10, art. xii.) In *State* v. *Hickman, ante,* page 370, it was decided that a clause of the constitution which fixed the salary of the secretary of State, and prescribed the times of its payment, was an appropriation made by law. It is obvious that this principle does not determine the question before us. The statute specifies the prices which shall be paid for the printing that has been authorized by the contract between the relator and the Territory. (Comp. Stats. div. 5, ch. xcviii.) The law further provides that the governor and auditor shall examine the "itemized account" of the contractor, which shall be rendered "once in each month," and "if they find it to be correct and in accordance with the provisions of this chapter,

the auditor shall draw his warrant on the territorial treasurer for the payment of the same." (Comp. Stats. fifth div. § 1636.) "The auditor of the Territory is hereby empowered to issue territorial warrants drawn upon the treasury of the Territory, in favor of all persons to whom the legislative assembly of the Territory may direct." (Comp. Stats. fifth div. § 1122.) The obligations of the Territory, under the terms of the contract with the relator for the public printing, have been assumed by the State, and the constitution in the most solemn manner protects and enforces the rights of individuals, associations, and corporations which existed at the time when Montana was admitted into the Union. (Art. xx. Schedule, §§ 1, 2, 9, 10, 12.) This historic event operated as a repeal or amendment of "all laws enacted by the legislative assembly of the Territory of Montana and in force," which were inconsistent with the constitution of the State. (Art. xx. Schedule, § 1.)

The writ of mandate shall be issued "to compel the performance of an act which the law specially enjoins as a duty resulting from an office." (Code Civ. Proc. § 566.) Are the foregoing provisions of the statute concerning printing consistent with the constitution? There is no law which appropriates in express language a certain sum for the payment of the claim of the relator. Is the auditor empowered, after the admission of the State into the Union, to draw his warrant according to the territorial statute, *supra?*

The Constitution of the United States provides that "no money shall be drawn from the treasury but in consequence of appropriations made by law." (Art. i. § 9.) The leading case upon the interpretation of this clause is *Reeside* v. *Walker*, 11 How. 272. This was a petition for a writ of *mandamus* to direct the secretary of the treasury to enter upon the books of his department the sum of $188,496.06 to the credit of, and to pay the same to, the plaintiff. Upon the trial of another action the jury returned a verdict, and certified that the United States was indebted in this amount to James Reeside. A final judgment was entered in his favor therefor, which was in full force when this proceeding was commenced by his executrix. Mr. Justice Woodbury, as the organ of the court, said: "No officer, however high, not even the President, much less a secretary of

the treasury, or treasurer, is empowered to pay debts of the United States generally, when presented to them. If, therefore, the petition in this case was allowed so far as to order the verdict against the United States to be entered on the books of the treasury department, the plaintiff would be as far from having a claim on the secretary or treasurer to pay it as now. The difficulty in the way is the want of any appropriation by Congress to pay this claim. . . . . Hence the petitioner should have presented her claim on the United States to Congress, and prayed for an appropriation to pay it. If Congress after that make such an appropriation, the treasury can, and doubtless will, discharge the claim without any *mandamus;* but without such an appropriation it cannot and should not be paid by the treasury, whether the claim is by a verdict or judgment, or without either, and no *mandamus* or other remedy lies against any officer of the treasury department, in a case situated like this, where no appropriation to pay it has been made. The existence of this other and ordinary mode of redress, by resort to Congress, may be another reason against a *mandamus,* as that lies only when no other adequate remedy exists. (*Marbury* v. *Madison,* 1 Cranch, 137; *Kendall* v. *United States,* 12 Peters, 525.)"

The history of this vital clause of the constitution forms a grand part in the struggle for liberty between the people and monarchs of England. In *Magna Charta* it is confirmed that "no scutage or aid shall be imposed in our kingdom unless by the general council of our kingdom." In 1688, the act "for declaring the rights and liberties of the subject, and settling the succession of the crown" (or bill of rights), declared "that levying money for or to the use of the crown by pretense of prerogative, without grant of parliament for longer time, or in other manner than the same is or shall be granted, is illegal."

Words have changed in signification during the progress of time, but the principle has not been modified, and this bulwark of freedom has been preserved in the constitutions of the States of the Union. The decisions are in harmony with the doctrine of *Reeside* v. *Walker, supra,* although there have been dissensions respecting the acts of the legislative department to ascertain whether they are in legal ffe t appropriations. The Supreme Court of Indiana, in *Ristine* v. *State,* 20 Ind. 328, held

that the interest upon the public debt of the State could not be paid without a specific appropriation by the legislature. Mr. Justice Perkins, in the opinion, says: "There are some things which, plainly enough, are not severally an appropriation. A promise by the government to pay money is not an appropriation. A duty on the part of the legislature to make an appropriation is not such. A promise to make an appropriation is not an appropriation. The pledge of the faith of the State is not an appropriation of money with which to redeem the pledge. . . . . Appropriation, as applicable to the general fund in the treasury, may, perhaps, be defined to be an authority from the legislature, given at the proper time, and in legal form, to the proper officers, to apply sums of money out of that which may be in the treasury, in a given year, to specified objects or demands against the State. An appropriation of the money to a specified object would be an authority to the proper officers to pay the money, because the auditor is authorized to draw his warrant upon an appropriation, and the treasurer is authorized to pay such warrant if he has appropriated money in the treasury."

In *Swann* v. *Buck*, 40 Miss. 298, Mr. Justice Ellett delivered the opinion, and said: "The only remedy for a debt due by a State is by an application to the legislature to make an appropriation for its payment. Indeed, no money can be drawn from the treasury but in consequence of such an appropriation. . . . . The grants and executed contracts of a State are contracts within the protection of the constitution. But its executory contracts, such as promises to pay money and the like, have no other than a moral sanction, and depend upon good faith for their performance." (See, also, *State* v. *Wallichs*, 12 Neb. 407; *State* v. *Wallichs*, 15 Neb. 609; *State* v. *Babcock*, 18 Neb. 221; *Stratton* v. *Green*, 45 Cal. 149; *Marshall* v. *Dunn*, 69 Cal. 223; *Brown* v. *Fleischner*, 4 Or. 132; *People* v. *Burrows*, 27 Barb. 89; *People* v. *Tremain*, 29 Barb. 96.)

Upwards of twenty years ago the Supreme Court of the Territory, in *Langford* v. *King*, 1 Mont. 38, thus expressed the law through Mr. Justice Knowles: "There is, then, no legal power to enforce territorial contracts. In other words, there is no obligation to territorial contracts. They rest simply upon the good faith of the Territory." The case of *Fisk* v. *Cuthbert*, 2

Mont. 593, which is cited by the appellant, is rendered inapplicable by the adoption of the constitution of the State. We conclude from the authorities *supra*, that the respondent cannot draw his warrant upon the treasurer of the State in payment of the claim of the relator, in the absence of an appropriation by law. The foregoing prohibitions of the constitution refer to the auditor as well as the treasurer, and any other officer who is empowered to disburse the public funds, in pursuance of a lawful appropriation. To this extent the statute regulating printing, which requires the drawing of a warrant after the "itemized account" has been found correct by the governor and auditor, cannot be enforced at this time. The relator must apply to the legislative assembly of the State for relief, and this, according to the precedents, appears to be the "plain, speedy, and adequate remedy."

It is therefore ordered that the judgment of the court below be affirmed, with costs.

HARWOOD, J., and DE WITT, J., concur.