PEOPLE ex rel. CROKER v. STURGIS, Fire Com'r.

(Supreme Court, Appellate Division, First Department. January 9, 1903.)

1. MUNICIPAL CORPORATIONS—CHIEF OF FIRE DEPARTMENT — RELIEF FROM DUTY—MANDAMUS.

Where a chief of the fire department in New York City was relieved from command and from his duties until the expiration of the time for which he had been granted a leave of absence for the benefit of his health, on an application for peremptory mandamus to compel the fire commissioner to reinstate him before the expiration of such leave of absence the only question that can be considered is the fire commissioner's power to make the order.

2. SAME—ABUSE OF ADMINISTRATIVE POWER.

Mandamus will not lie to compel the fire commissioner of New York city to rescind an order relieving the chief of the fire department from duty during the time fixed for the petitioner's vacation, on his refusal to consume such time as intended, on the ground that such order was an abuse of the commissioner's administrative power.

3. SAME—FIRE COMMISSIONER—POWERS.

Greater New York Charter, § 724, provides that the fire commissioner shall possess exclusively all powers and perform all duties for the government and management of the fire department of the city; section 727 provides that the fire commissioner shall have power to organize the fire department into such bureaus as may be necessary for the performance of the "duties imposed upon him," one of which shall be charged with the duty of preventing and extinguishing fires, the principal officer of which shall be called "Chief of Department"; and section 728 declares that the fire commissioner shall have power to select heads of bureaus and as many officers and firemen as may be necessary, and they shall at all times be under his control, and shall perform such duties as may be assigned by him, provided that the assignment of duty and promotion in the uniformed force shall be made by the fire commissioner on the recommendation of the chief of the department. *Held*, that though sec-

tion 728 created the office of chief of the department, and gave him sole power to nominate to the commissioner assignments of duty and promotions in the uniformed force, such chief was under the administrative control of the fire commissioner, who, under the general power prescribed by the charter, had authority to grant such chief a leave of absence for the benefit of his health, and fix the length thereof, and relieve the chief from duty during such time on his refusal to occupy the same as intended.

Van Brunt, P. J., and O'Brien, J., dissenting.

Appeal from special term, New York county.

Application by Edward F. Croker for a peremptory writ of mandamus against Thomas Sturgis, as fire commissioner of the city of New York, requiring the latter to reinstate petitioner in the office of chief of the department, and to the command of the uniformed force of the fire department of the city of New York. From an order directing the issuance of a peremptory writ as prayed, defendant appeals. Reversed.

See 78 N. Y. Supp. 77.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

George L. Rives, for appellant.
John J. Delany, for respondent.

HATCH, J. By the affidavit of the relator, and also by the return, it appears that on or about the 2d day of August, 1902, upon relator's written application, he was granted a leave of absence for a vacation of 90 days, and immediately thereafter ceased to perform his duty as chief of the department of the bureau for preventing and extinguishing fires, and entered upon his vacation. The relator continued upon such leave of absence until the 18th day of August, 1902, when he voluntarily returned, assumed and entered upon the discharge of the duties of his office, and on the next day reported to the commissioner such fact. By the return it is stated that:

"A leave of absence of sixty days was granted to the relator on his written request, because deponent believed that the condition of the relator's health was such that he ought to take a rest for that length of time. In the exercise of his [deponent's] discretion, therefore, when the relator presented himself for duty on August 19, 1902, deponent refused to allow him to perform his duty, for the reason that his vacation had not expired. Upon his insisting that he be permitted to perform his duties, and his refusal to continue his vacation until the expiration of the time granted him, deponent, in the exercise of his administrative jurisdiction, relieved him from the command of the uniformed force, but ordered him to report to the deponent for duty each Monday at ten o'clock."

The written order of the commissioner is set out in full in the affidavit of the relator, and corresponds with the facts as stated in the return.

It is readily apparent that the sole question presented by this appeal is that of power upon the part of the commissioner to make the order which he did. So far as motive is concerned, upon the part of the commissioner in relieving the relator from the performance of his duty, we have nothing to do; nor can the court exercise supervisory control over the commissioner's actions, or inquire into his reasons

therefor. If in the course of administration he had power to do the act, such action and his reasons therefor are not of consequence. Hubbard v. Sadler, 104 N. Y. 223, 10 N. E. 426. The necessities of government require the delegation of authority to public officers for purposes of administration; and, within the limitations of the delegated power, they are supreme in administration, and particular acts in execution of the power may not be questioned. Protection from the abuse of power is usually found in the discreet selection of the officer, and much must be left to his judgment and integrity. Wait v. Ray, 67 N. Y. 36. If the official be guilty of an abuse of power, the remedy must be found by removal from office, or otherwise, as the law provides. Mandamus will not lie to correct abuse in administrative acts. If such act could be questioned, the return of the commissioner is conclusive, and must be taken as true. Such return shows that the insistence upon the continuance of the leave of absence by the relator was prompted by motives which may easily have been for the good of the service. The question, however, as before observed, is one of power; and, if that exists, the courts have no control over the action of the commissioner. An examination of the charter provisions which invest the commissioner with authority in the administration of his office becomes necessary, in order to determine such question.

Chapter 15 of title 1 of the Greater New York charter provides for the organization of a fire department, and prescribes the duties and powers of officers and men. Section 720 provides that the head of the department shall be the fire commissioner, and shall be appointed by the mayor. Section 724 provides that:

"The fire commissioner shall possess and exercise fully and exclusively all powers, and perform all duties for the government, management, maintenance and direction of the fire department of the city, and the premises and property thereof."

By further provision of this section, the department is given exclusive power and authority to extinguish fires, and have the custody of all property used in connection with such department, the title to which is vested in the city of New York. Section 725 invests the fire commissioner with authority to provide supplies, etc., for the department, subject to the provisions of the act. Section 726 invests him with power over the government, management, and maintenance of the buildings and property provided for the use of the department. Section 727 provides:

"The fire commissioner shall have power to organize the fire department into such bureaus as may be convenient and necessary for the performance of the duties imposed upon him. One bureau shall be charged with the duty of preventing and extinguishing fires, and of protecting property from water used at fires, the principal officer of which shall be called the 'Chief of Department.'"

By this section there is also established a bureau, under the charge of an inspector, for the execution of all laws relating to the storage, sale, and use of combustible materials, and another bureau, charged with the investigation of the origin and cause of fires, under the charge of "fire marshals." Section 728 provides:

"The fire commissioner shall have power to select heads of bureaus and assistants and as many officers and firemen as may be necessary, and they shall at all times be under the control of the fire commissioner, and shall perform such duties as may be assigned to them by him, under such names or titles as he may confer: provided, however, that assignments to duty and promotions in the uniformed force shall be made by the fire commissioner upon the recommendation of the chief of the department, and in case any recommendation so made by the chief shall be rejected, he shall within three days submit another name or names, and continue so to do until the assignment or promotion is made."

By section 729 the fire commissioner is given exclusive right and power to designate and fix the location of all fire-alarm telegraphs, and other apparatus for the use of the department. By section 731 the fire commissioner is "authorized, empowered and especially charged with the duties of enforcing the several provisions of this chapter, and may, subject to the provisions of the act, incur any expense necessary and proper therefor." Section 733 authorizes the fire commissioner to make suitable regulations for the wearing of badges by the officers and men of the fire department. The discipline of the force is governed by the provisions of section 739 of the charter, and will be hereafter noticed.

There is running through the provisions of the chapter creating the fire department authority conferred upon the commissioner in respect to various matters and duties, in the same general language, and also specifically, as is conferred by those provisions of the charter to which we have called attention. They are only important as bearing upon the power vested in the fire commissioner in the government and management of the force, and in the performance of the duties with which he is charged. Those parts, however, which we have quoted, are sufficient in illustration of the power possessed by him. The principle is well established that "statutes containing grants of power shall be construed so as to include the authority to do all things necessary to accomplish the object of the grant, and to enable the donee of the power to effect the purpose of the act." Mayor, etc., v. Sands, 105 N. Y. 210, 11 N. E. 820. And where the law commands a thing to be done, it authorizes the doing of any act essential to the execution of the command. Green v. Mayor, etc., 2 Hilt. 203. Such is the general rule for the interpretation of statutes. End. Interp. St. § 418.

It will be difficult to find language broader in terms to invest an officer with general power than that contained in the provisions of sections 724 and 728 of the charter, which we have quoted. Therein the fire commissioner is clothed with all the power essential and necessary for the government, management, and maintenance of the fire department, and he is laid under a command to properly discharge the duties inhering thereto. By the provisions of section 727, the bureaus which are therein authorized to be established are so established for the purpose of enabling the commissioner to perform the duty imposed upon him in administering the department and in governing the force. The officers of such bureaus, by section 728, are required to perform such duties as may be assigned to them by the commissioner. Argument cannot add to the force of this

language respecting the power thus conferred. As the commissioner was charged with full responsibility for the government and management of the force, it was essential that he should be invested with ample authority in discharge of the same; and to cripple him in this regard with prescribed limitations, not defined in the statute, would necessarily tend to the impairment of the force, and impose upon the commissioner the responsibility for the good government and maintenance of the department, without corresponding authority to correct abuses which might grow up therein, or cause specific action to be taken in order to prevent evils in practical management. Therefore it was that the heads of bureaus and officers were made subject to the commissioner in the performance of such duties as he should assign, and the men employed therein, under such names or titles as he might confer.

It is common knowledge that, in the government and management of so important a department of the city as the fire department, much must be left to the sound judgment and integrity in administration of its head. Exigencies continually arise for which the ingenuity of man would not be able to provide a remedy in advance by specific statutory enactment: and, in practical operation, it has been found impossible to govern a large department by detailed statutory authority. Contingencies present themselves beyond the contemplation of the most far-seeing minds, and therefore it is that general rules only, in most cases, are found practicable. Power is uniformly exercised within such limitations as experience has demonstrated may with safety and propriety be imposed. The power which relieves from the performance of duty, for recuperation, physical incapacity, or for any other reason which the exigencies of the department demand, not embraced within offenses committed against the law and rules of the force, is precisely the same power, exercised for the same purpose, that assigns a man to the performance of duty; and the exercise of such power may be as essential for the good government and maintenance of the force in the one case as in the other. Such power is continually exercised in the administration of large departments in every branch of government, municipal, state, and national, under a general authority to govern. It is frequently as essential that employés and officers be required to cease for a time from their labors and duties, as it is that they perform the tasks connected with the position or office which they hold. Indeed, there is no department of the city government which does not make some provision for a vacation upon the part of their employés. The faithful performance of duty seems to require it, and the physical constitution of man demands it. It is no stretch, therefore, of authority, upon the part of a head of a department, to insist upon a suspension of the performance of duties for a temporary period, if he finds it necessary. We are not now concerned with the question as to whether the fire commissioner is invested with authority to suspend from duty for an indefinite time or forever. This record presents no such question. The relator had been relieved from the performance of his duty for a specified period of time, which had not yet expired, nor had

such period expired when this writ was sued out. The return showed that the commissioner insisted that the vacation should continue until the expiration of the period for which it had been granted, and we think that this was as clearly within his power to insist upon, as was the right to grant the application in the first instance. He then determined that a vacation was necessary for the good government and maintenance of the force, and for that period.

It is said, however, that, as chief of the bureau for the prevention and extinguishment of fires, the relator was charged with functions, the performance of which were quite independent of any direction or control by the commissioner. The statute, so far as we are able to find, does not assume to define the duties which are imposed upon the relator. Section 727 contains the authority for the establishment of bureaus, and the appointment of heads thereof; but such creations, by the express provisions of the statute, are to enable the commissioner to perform the duties imposed upon him. The head of the bureau to which the relator was appointed, in order to enable the commissioner to discharge his duties, is not charged in terms with a specific thing, but the bureau is charged with the duty of preventing and extinguishing fires and protecting property from water used at fires. This was the obligation of the commissioner, and not of the relator, except as he acted for the benefit of and to enable the commissioner to discharge his duties in that connection. This is made clear by the provisions of section 728, which provides that the head of such bureau shall be under the control of the fire commissioner, and shall perform such duties as may be assigned to him by the commissioner. It seems evident, therefore, that the relator, as head of the bureau, possessed no independent power of action therein, except as we shall hereafter notice, but that he at all times occupied the relation of a subordinate to the commissioner in the discharge of his duties, and was bound to perform such duties as the commissioner imposed upon him in such position. We do not mean to be understood as saying that, in the discharge of the ordinary duties of his position, in the absence of specific direction from the commissioner, the relator could not perform those duties according to his own discretion and judgment. On the contrary, he could; for by his appointment he was charged with the performance of such duties as the position required, and much, therefore, would necessarily be left to his discretion, and entirely so in the absence of any direction upon the part of the commissioner. But this did not make him independent of the commissioner, in the sense of having exclusive authority, nor did it absolve him from obedience to the direction of the commissioner; for by virtue of these two provisions of the charter the relator was subject at all times to the direction, control, and management of the commissioner, as it was that officer who was charged with the duty of preventing and extinguishing fires, and protecting property from water used at fires. As the commissioner was responsible for the faithful performance of such duties, he was at all times vested with the power to control and manage the method of their discharge. The relator was therefore the subordinate of the commissioner, and subject to his direction and control. The only

purely independent authority conferred by statute upon the relator, which we are able to find, is that contained in section 728, which provides that assignments to duty and promotions in the uniformed force shall only be made by the fire commissioner upon the recommendation of the chief of department. There is nothing in this provision which confers any general powers upon the relator. On the contrary, it is limited to a specific thing; and while, doubtless, it is a clear limitation upon the power of the commissioner to act, yet it only extends to the matter for which the statute provides. Outside of this subject, by virtue of the express provisions of the statute, the commissioner's authority, so far as the question is involved in this case, is unlimited. The fact that this specific authority is granted to the relator shows an intention upon the part of the legislature to limit the power of the relator to the specific thing for which the statute provides, but it does not affect in any wise the general powers conferred upon the commissioner in other matters. Hoey v. Gilroy, 129 N. Y. 132, 29 N. E. 85; People v. Board of Councilmen of City of Buffalo (Super. Buff.) 20 N. Y. Supp. 51, affirmed in court of appeals, on opinion below, in 135 N. Y. 660, 32 N. E. 648. Nothing contained in Gregory v. Mayor, etc., 113 N. Y. 416, 21 N. E. 119, 3 L. R. A. 854, conflicts with this view. Therein the suspension was for an indefinite period, without pay, and under such circumstances as called for action upon the part of the commissioners either to dismiss or employ. The suspension worked neither result, and there was therefore no basis for the exercise of such power in aid of a duty imposed upon the commissioners. The court recognized, however, that, where a general obligation and duty were imposed, a case might arise which would compel recognition of the power. As applied to the facts of that case, the power was not conferred. This case is entirely different. There is here no suspension for an indefinite time, while, as we have seen, general power was conferred. What appears is that the commissioner insisted that the relator should continue upon his vacation until the leave of absence expired. This, as we have already seen, was within the clear power of the commissioner to insist upon; and, as the case involves no other question, none other need be supposed or considered.

It is said, however, that as the provision of section 739 of the charter provides for the trial and conviction of a member of the force for offenses against the laws and rules of the department, which may be punished by a reprimand, or forfeiture of pay, or dismissal from the force, the provisions of this section are exclusive, and furnish the only authority for relieving from duty, or otherwise disciplining or dismissing as the statute provides. We think this provision of the charter is entirely aside from any question involved in the present proceeding. It is not pretended that the relator has been guilty of any offense which subjected him to discipline or dismissal by virtue of the provisions of this section. The power conferred therein has not been invoked by the commissioner, nor does his action rest upon any such ground. The relator's rights, as the head of the bureau to which he was appointed, had not been invaded, nor has he infringed any of the rules of law. If we are correct in our conclusion that, under the general authority to

which we have called attention, power was conferred upon the commissioner to control and direct the actions of the relator, then the section of the charter relating to the discipline of the force has no application, and no steps have been taken thereunder.

We conclude, therefore, that the commissioner had authority in the control of the relator to direct him to continue upon his vacation for the period covered by his leave of absence; and, reaching this conclusion, it follows that the order appealed from should be reversed, with $10 costs and disbursements, and the motion for the writ denied, with $10 costs.

McLAUGHLIN, J., concurs.

INGRAHAM, J.   While concurring generally with Mr. Justice HATCH, I prefer to place my concurrence in the decision upon the ground that in this proceeding the court was without authority to review the action of the fire commissioner in temporarily suspending from duty the chief of the department.   The petitioner asked for a peremptory writ of mandamus requiring the commissioner to rescind and vacate an order suspending him (the chief of the fire department) from the duties of his office as such chief.   The court granted a mandamus commanding the fire commissioner "forthwith to reinstate the said Edward F. Croker in the office of chief of department, and to the command of the uniformed force of the fire department of the city of New York, and in the duties, rights, and privileges of the said office," and further to do each and every act and thing necessary to that end.   The order of the fire commissioner does not remove the petitioner from his office.   It is that "the chief of the department, Edward F. Croker, is hereby relieved from command of the uniformed force, to take effect on the receipt of this order."   The petitioner continued in office, and, when reassigned to duty by the commissioner, will be charged with the performance of its duties.   The petitioner alleges that on the 2d day of August, 1892, he was granted a leave of absence for 60 days, and, acting upon this leave of absence, departed from the city, and relinquished his command of the uniformed force in the department. He returned to New York on the 18th day of August, and resumed command of the uniformed force, and on the 19th day of August the commissioner requested him to continue his vacation during the period for which his leave of absence had been granted.   With this request of the commissioner he declined to comply, stating that he had voluntarily abandoned the unexpired term of the leave of absence, and was ready, willing, and prepared to continue in the exercise of the duties of his office, whereupon the commissioner issued the order to which attention has been called.

Unless the petitioner had a clear legal right to discharge the duties of his office at the time the proceeding was instituted, I think the application was improperly granted.   That the defendant had the power to give the petitioner a leave of absence of 60 days was not disputed.   It is not stated whether this leave of absence was at the request of the petitioner, but it is alleged by him that he was

given such a leave of absence, and accepted it, presumably because the vacation was proper and necessary. Having been thus granted a leave of absence for a specified period by the act of the commissioner, which it is conceded he had power to grant, I cannot see that it is the exercise of any other or greater power to say that the officer thus relieved from duty for a period of 60 days should not during that period resume the discharge of his duties. If the health or continued efficiency in the discharge of his duties required that the petitioner should have a vacation for 60 days, and that during that period he should be relieved from the performance of his duties, the court cannot say that it was not necessary or proper for the commissioner to require the officer to relinquish his command. If the relator had become mentally or physically disabled from performing the duties of the department, I do not think it would be disputed but that the commissioner would have the power, under the provisions of the charter, to suspend the officer from the active performance of his duties during the period necessary for his recovery; and, if he had such power, the question as to its exercise involves a question of discretion, which the court could not review upon an application for a mandamus. If the commissioner should attempt to turn this suspension into a removal or make it permanent, it would then be time for the relator to apply for the relief, but nothing of that kind is alleged. By section 727 of the charter, the fire commissioner is authorized to organize the fire department into such bureaus as may be convenient and necessary for the performance of the duties imposed upon him. One of those bureaus was to be charged with the duty of preventing and extinguishing fires, and of protecting property from water used at fires, the principal officer of which was to be called the "Chief of Department." Section 724 provides that the fire commissioner shall possess and exercise freely and exclusively all powers, and perform all duties, for the government, management, maintenance, and direction of the fire department of the city, and the department was given sole and exclusive power and authority to extinguish fires in such city. There was distinctly imposed upon the commissioner the government, management, maintenance, and direction of the department, and the duty to extinguish fires in the city. By section 728 of the charter, the fire commissioner was authorized to select the heads of the several bureaus who were required to perform such duties as should be assigned to them by him. That the commissioner could make no promotion in the department, except upon the recommendation of the chief, did not any the less make the chief a subordinate of the commissioner, appointed for the purpose of performing the duties imposed upon the department for the prevention and extinguishment of fires; and if, in the opinion of the commissioner, a respite from work was essential for the efficient performance of that duty, by the chief, it seems to me that the commissioner had full power to insist upon the chief's taking such a vacation as would enable him to properly perform the duties imposed upon him. I therefore think that the commissioner had the power to insist upon it that the relator should not return to duty until the expiration of the period which had been given to

him for a vacation, and that the court below was not justified in reviewing this discretion vested in the commissioner. It is for this reason that I think the order appealed from should be reversed.

VAN BRUNT, P. J. I cannot concur in the opinion adopted by the majority of the court in this case. While the powers which are conferred upon the fire commissioner are referred to at length, those parts of the statute, although quoted, which compel the exercise of these governmental powers in a particular way, are given no force or effect whatever. We are told that it is provided by section 724 of the charter, "The fire commissioner shall possess and exercise exclusively all powers, and perform all duties for the government, management, maintenance and direction of the fire department of the city, and the premises and property thereof," and that section 726 provides that "the fire commissioner shall possess and exercise full and exclusive power and discretion for the government, management, maintenance and direction of the several buildings, premises," etc. The terms used in this section undoubtedly gave the fire commissioner unlimited power in the organization, management, maintenance, and direction of his department. These unlimited powers are, however, by the next two sections, directed to be exercised in a particular way. Section 727 provides that "the fire commissioner shall have power to organize the fire department into such bureaus as may be convenient and necessary for the performance of the duties imposed upon him." In this language there is a clear assumption that it will be necessary for the fire commissioner, in his organization of the fire department, to form bureaus through which the work of the department is to be done. Up to this point there is no limitation upon the number of bureaus, or the duties to be assigned to each. The next paragraph of the section under consideration, however, expressly limits and regulates this general power of organization. The next paragraph expressly provides for the formation of at least one bureau, which shall have certain duties assigned to it, and a principal officer. The paragraph reads as follows:

"One bureau shall be charged with the duty of preventing and extinguishing fires and of protecting property from water used at fires, the principal officer of which shall be called the 'Chief of Department.' "

This office is therefore just as much a creation of the charter as the office of the fire commissioner itself. The fire commissioner must therefore so organize his department that there shall be one bureau in it whose duty it shall be to deal with fires. He must so organize it that there shall be a principal officer in it. That is an officer who shall, not only in name, but in fact, be its head. These provisions are a clear limitation upon the general powers which had theretofore been conferred in the charter upon the commissioner. No matter what else he could do, he had to organize this bureau,—make in it a principal officer, who should not only in name, but in fact, be its head. In this same section the organization of other bureaus, to which certain duties shall be assigned, is provided for. If the commissioner has the absolute and unrestricted power claimed for him by the prevailing opinion, he had the right to ignore entirely these provisions of the statute. He

might organize as he pleased, or not, the bureaus there provided for. He might make an entirely different distribution of work and duties. Or he might organize these bureaus, but omit to create the office of "principal officer," as in the statute provided. If the powers of the fire commissioner are as unlimited as the prevailing opinion assumes, the fire commissioner could ignore all these provisions. It is clear that he could not. He was bound by them. He could have been compelled to obey these provisions of the law, namely, to organize a department to deal with fires, and make provision for an officer who should be the actual head of the bureau. Now if he could have been compelled so to organize his bureaus, how is it possible for him, after having organized such bureau and having provided for such principal officer, and having fixed his duties consistent with the requirements of the charter, to arbitrarily, against the will of such principal officer, deprive him of the right to exercise the duties which the statute has conferred upon him? It is said that this can be done under the unlimited powers conferred upon the commissioner for the government of his department. But he has no such absolute power of government. His powers are expressly limited, and the chief of department—an office established by the very charter from which the commissioner derives his office—has his duties to perform. The duties of the chief of department are just as much statutory as those of the commissioner. He has the same vested right in their performance as the commissioner himself has. If there was any doubt about this proposition, it is set at rest by the language of the next section:

"Sec. 728. The fire commissioner shall have power to select heads of bureaus and assistants and as many officers and firemen as may be necessary, and they shall at all times be under the control of the fire commissioner, and shall perform such duties as may be assigned to them by him, under such names and titles as he may confer."

This last clause seems to show conclusively that it was not intended to apply to the heads of bureaus provided for in the preceding section. The commissioner by that section was required to call the heads of those bureaus by certain names,—not "such names and titles as he may confer." Again, this latter section provides that the persons selected under it "shall perform such duties as may be assigned to them by him." This clearly cannot apply to the heads of bureaus referred to in the previous section, as to them can only be assigned duties which are consistent with the position of principal officer. The head of these bureaus is to be, not only in name, but in fact, the principal officer in the bureau. This is what the statute says, and which provision is entirely swallowed up in the prevailing opinion by the stress laid upon the general powers conferred upon the commissioner. That it was the intention of the statute that the commissioner should not have the absolute control as to what duties should be performed by the heads of bureaus created by the statute seems to be further apparent by the succeeding language of section 728, which is as follows:

"Provided, however, that assignments to duty and promotions in the uniformed force shall be made by the fire commissioner upon the recommendation of the chief of department, and in case any recommendation so made by the chief shall be rejected, he shall, within three days, submit another name or names and continue so to do until the assignment or promotion is made."

What, in view of this provision, becomes of the claim of absolute control of the fire commissioner in the management of his department? He cannot assign to duty or promote a man in the uniformed force, except upon the recommendation of this very chief of department that he claims the right to suspend from duty whenever he chooses. I say "suspend from duty" intentionally. It is true that the commissioner talks about "relief from duty," but I can see no difference in the terms. The commissioner can no more relieve than he can suspend. It seems to me clear that the chief of department is as much a statutory officer as the commissioner himself, that the commissioner must so organize his department that this chief of department shall be the principal officer in one of the bureaus which he is obliged to organize in his department, and that there are explicit duties which the statute calls upon him to perform, which the commissioner cannot take away from him. If the statute means anything, then the chief of department is beyond the whim of the commissioner, and he can be disciplined only in the method provided for in the statute.

O'BRIEN, J., concurs.