(88 App. Div. 443.)

PEOPLE ex rel. ADAMS DRY GOODS CO. et al. v. WOODBURY, Com'r.

(Supreme Court, Appellate Division, First Department. December 11, 1903.)

1. MANDAMUS—PEREMPTORY WRIT—SHOWING NECESSARY.
    A peremptory writ of mandamus can only be granted where the facts are unquestioned, showing a clear legal right.

2. SAME—OPPOSING AFFIDAVITS.
    On application for a peremptory writ of mandamus, the opposing affidavits must be regarded as true.

3. SAME—RELIEF DEMANDED.
    Where, on an application for a peremptory writ of mandamus to compel respondent, as street cleaning commissioner, to clean the streets in front of petitioners' premises, and to remove garbage and ashes therefrom, the answering affidavits denied that respondent had refused to remove garbage or failed to keep the streets clean, petitioners were not entitled to the writ, because demanding a greater measure of relief than they were entitled to.

4. SAME—STREET CLEANING COMMISSIONER—DISCRETION.
    Greater New York Charter, § 534 (3 Laws 1901, p. 239, c. 466), provides that the street cleaning commissioner shall have control of the sweeping and cleaning of the streets, and the removal of ashes, garbage, and other light refuse and rubbish. It is further provided by section 1542 (page 635) that the commissioner shall not make expenditures exceeding the amount appropriated annually by the board of estimate and apportionment for street cleaning purposes. The amount of garbage and other refuse to be removed being such that it was impossible for the street cleaning department, with the fund at its disposal, to handle all of the material which it had formerly disposed of, the street cleaning commissioner discontinued the practice of removing ashes from large office buildings, department stores, etc. Held, that his action in this regard involved the exercise of discretion, so that mandamus would not lie to compel him to remove ashes from a department store.

Appeal from Special Term, New York County.

Mandamus by the people, on the relation of the Adams Dry Goods Company and others, against John M. Woodbury, as commissioner of street cleaning of the city of New York. From an order denying the writ, relators appeal. Affirmed.

The petitioners, who are proprietors of what are known as "department stores," applied to the Supreme Court for a peremptory writ of mandamus to compel John M. Woodbury, commissioner of street cleaning of the city of New York, to "forthwith remove from the premises of your petitioners, and the streets in front of and adjacent thereto, the ashes, street sweepings, garbage, and other light refuse and rubbish which have therein or thereon accumulated, and in the event that, for any reason, a peremptory writ cannot issue, that then an alternative writ issue for the same relief, in accordance with the practice in such case, and for other and further relief." In their petition they set forth that they are severally engaged in conducting a very extensive business in their respective stores, all of which are situated in a busy shopping district in the borough of Manhattan, in the city of New York; that the streets upon which their respective stores are located are public highways, under the care and in the custody and control of the com-

––––––––––––––––––––––––––––––––

¶ 1. See Mandamus, vol. 33, Cent. Dig. § 408.

missioner of street cleaning; that, by chapter 466 of the Laws of 1901, provision is made for the appointment of a street cleaning commissioner; that Mr. Woodbury was duly appointed such commissioner on the 1st of January, 1902, and that he duly qualified as such, and has ever since continued at the head of the street cleaning department, and that it was and still is his duty to remove from the streets of the city ashes, garbage, and other light refuse and rubbish, and that it is made his duty, by law, "to sweep and clean all the streets of the boroughs of Manhattan, the Bronx, and Brooklyn, and to remove or otherwise dispose of, as often as the public health and the use of the street may require, all ashes, street sweepings, garbage, and other light refuse and rubbish"; that by section 539, c. 466, p. 243, vol. 3, of the Laws of 1901, it is provided that "all avenues, streets, alleys and places in said city which the said department of street cleaning is by said act charged with the duty of cleaning, shall be cleaned and kept clean by hand labor," and that it is the duty of the commissioner of street cleaning to divide the city into a certain number of districts for the purpose of street cleaning; that by section 441 of the same statute it is made his duty to purchase or hire, from time to time, for his use as such commissioner, at current prices, such and so many horses, carts, tugs, scows, machines, and tools and other property as may be required for the economical performance of his duties, or to contract for the construction of such carts, tugs, scows, machines, and tools for the use of the sweeping of the streets and the removal of street sweepings, and to remove from said streets ashes, garbage, and other light refuse and rubbish. The petitioners then set forth that it is the duty of the commissioner to remove from their respective stores, and the streets in which they are located, ashes, street sweepings, garbage, and other light refuse and rubbish which have therein or thereon accumulated; that since on or about November 24, 1902, the commissioner has failed, neglected, and refused to remove from the place of business of each of the petitioners, and the streets in front of and adjacent thereto, ashes, street sweepings, garbage, and other light refuse and rubbish which have therein or thereon accumulated; that he has continued to remove from places of business other than department stores, and from the private residences of the city of New York, and the streets in front of and adjacent thereto, ashes, street sweepings, garbage, and other light refuse and rubbish which have therein or thereon accumulated, and that he has discriminated against the petitioners and the owners of and persons conducting department stores, in favor of persons owning, conducting, or carrying on a business other than that of a department store, and in favor of the private residents of the city of New York; that such discrimination is unjust, illegal, and inequitable, and without right or warrant in law; that the commissioner of street cleaning has declared and stated that such discrimination has been made and will be continued, and that he has admitted that he has refused and neglected to remove the ashes, street sweepings, garbage, and other light refuse and rubbish which have accumulated on the premises of the petitioners, and that he has declared and announced that the same would be continued; that such discrimination has been made since November 24, 1902, and that before that time no such discrimination was made against the petitioners, or either of them; that prior to that date the petitioners were given service similar to that which was received by the owners or persons conducting a store or business other than a department store, and in the residential portion of the city, but that since November 24, 1902, discrimination has been made, and that the petitioners have been informed by the street cleaning commissioner such discrimination will be continued, and the uniformed force of the department will be, and have been since that date, permanently and continuously employed in the cleaning of the streets in front of and adjacent to stores and business places other than department stores, and the residential portion of the city, and has neglected to clean the streets in front of and adjacent to the department stores, or to remove the ashes, street sweepings, garbage, or other light refuse and rubbish which have therein or thereon accumulated; that the petitioners complained of such neglect to the commissioner, and demanded that he forthwith clean the streets in front of and adjacent to their premises, and remove the ashes, street sweepings, garbage, and other light

refuse and rubbish which have accumulated in or on their premises, which he declined to do; that prior to December 25, 1902, the proper authorities of the city of New York made appropriations to enable the street cleaning commissioner to perform the duties required of him by law; that he was allowed $5,362,112.20 for that purpose, with $32,400 as an additional allowance for general administration; that, of the aggregate sum so allowed, $3,782,693.21 was granted for the use of the commissioner in the boroughs of Manhattan and the Bronx, and, of the last-mentioned sum, $2,666,492.30 was allowed for sweeping and cleaning, $215,500 for administration, and $107,728.90 for supplies and contingencies, and that only a small portion of said sums has been spent or expended for the purpose of cleaning and removing the ashes, garbage, street sweepings, and other light refuse and rubbish from the streets and thoroughfares of the city of New York.

On this petition, a motion was made for a peremptory writ of mandamus. An affidavit was submitted by the commissioner, who, after making certain denials, admitted that he has continued to remove from places of business, other than department stores, and from the private residences of the city of New York, and the streets in front of and adjacent thereto, ashes, street sweepings, garbage, and other·light refuse and rubbish which have therein or thereon accumulated; that the conduct of the street cleaning department in respect of those matters is regulated by an order of the department dated November 17, 1902, which is in the following words:

"Department of Street Cleaning, City of New York.

"New York, November 17th, 1902.

"General Order, No. 14.

"The constantly increasing output of steam ashes and other trade waste from large business houses, office buildings, etc., having outgrown the capacity of the department plant, and the condition of the appropriation not being such as to warrant a continuance of such service, District Superintendents will notify those in charge of office buildings, wholesale houses and department stores from which removals by the Department are now being made that on and after Monday, the 24th, instant, such service will cease, and that on and after that date it will be necessary for them to make other arrangements for the removal of such material. They will at the same time be duly notified that the Department of Street Cleaning will receive at the Department dumps such steam ashes, etc., on the department scows for final disposition when hauled there in conformity to Department rules and regulations governing such privileges.

"By order of the Commissioner.

"F. M. Gibson, Deputy Commissioner."

The affidavit of the commissioner also contains a statement of the amount appropriated by the board of estimate and apportionment for the year 1903 for the street cleaning department, by which it appears that $3,782,693.20 was appropriated for the purposes of the department for the boroughs of Manhattan and the Bronx, and the commissioner swears that the amount was wholly inadequate to provide the department with the necessary facilities for the performance of its work; that, with the present facilities and machinery and apparatus for the performance of the work required of it by law, it would be impossible for the department to remove the ashes, light rubbish, and trade waste of the large business houses and office buildings and other similar institutions of the city, without neglecting to a dangerous extent the most necessary and essential work of the department, and for which it was primarily instituted; that, in view of that fact, the order above quoted was issued. The affidavit then sets forth that the enormous output of steam ashes and other trade wastes from large business houses, office buildings, and department stores has outgrown the capacity of the plant of the department; that the great buildings which have been erected all over the city for the purposes of offices, department stores, and factories, which manufacture their own heat, electricity, and steam power, have so outgrown the ability of the department to transport their wastes that they can no longer be handled by the department with its present equipment; that the

carts which are used in the street cleaning department are absolutely necessary for the collection of the ashes and garbage in the residential portion of the city and in the tenement house districts; that during the summer the carts that were used in the residential portion of the city were sent to the tenement house districts, and the department was able during the summer, to a large extent, to handle the ashes and rubbish of the large department stores and office buildings, but by the return to the city of the people in the fall of the year, and the increase in the amount of waste of all kinds, it was unable to collect the ashes from the office buildings and department stores after the summer. The commissioner then sets forth that he regards it as his first duty to sweep and clean the streets, and remove such dirt and rubbish as would ordinarily be gathered together by the sweeping and cleaning of the streets, and to remove such substances as are injurious to the public health; that trade waste, boxes, shavings, sawdust, ashes, etc., do not interfere with the public health, however unsightly they may be; that one of his important duties is the removal of animal or vegetable substances deemed by the board of health to be dangerous to the public health; that section 1542 of the Greater New York Charter (3 Laws 1901, p. 635, c. 466) requires the commissioner to so regulate the expenditures of the department for any purpose or object that the same shall not in any one year exceed the amount appropriated by the board of estimate and apportionment for such purpose or object, and that in pursuance of that requirement he has ordered and regulated the business of his department, and he sets forth that he is and will be unable to remove or cause to be removed from the premises of the petitioners the ashes, rubbish, and other light refuse which now have or hereafter may accumulate thereon or therein; that he has kept clean the streets in front of the premises, and will continue so to do; and that he is now, and has been at all times, willing to remove the garbage of the petitioners. The court denied the motion for the writ, and from the order entered thereupon the relators appeal.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Daniel P. Hays, for appellants.
Terence Farley, for respondent.

PATTERSON, J. The case comes before us on the petition and an affidavit in answer thereto. It is not claimed by the appellants that any issue of fact should have been tried, as upon an alternative writ. The affiant does not admit all the allegations of the petition. He denies that he (the street cleaning commissioner) has refused to remove the garbage from the premises of the petitioners, and avers that he has always kept the streets cleaned in front of the petitioners' premises, and will continue so to do. His refusal was to remove or cause to be removed from the premises of the petitioners ashes, rubbish, and other light refuse which now have accumulated or hereafter may accumulate thereon. The petitioners' claim is, as it is now urged, that, upon the facts as they are stated in the only record we have, they are entitled to a peremptory writ. As the petitioners take that attitude, we must regard the affirmative allegations of the answer as true, and a peremptory writ of mandamus can only be granted where the facts are unquestioned, showing a clear legal right. On application for a peremptory writ of mandamus, statements contained in the opposing affidavits, whether by way of denial or in affirmation of new matter, are to be taken as true. People ex rel. Gibbons v. Coler, 41 App. Div. 463, 58 N. Y. Supp. 988; Matter of Haebler v. N. Y. Produce Exchange, 149 N. Y. 414, 44 N. E. 87; People ex rel. Corrigan v. Mayor of Brooklyn, 149 N. Y. 215,

43 N. E. 554. We must therefore assume that the respondent has not refused to remove garbage, as alleged by the petitioners, and that he has kept the streets cleaned in front of their premises. They were not, therefore, entitled to the peremptory mandamus they demanded, for that looked to the awarding of some relief to which they are not entitled; and it has been held that, where an applicant for mandamus asks for more than he is entitled to, the application should be denied, even though he may be right in other respects. People ex rel. Byrnes v. Green, 64 Barb. 162; People ex rel. Ketteltas v. Cady, 2 Hun, 224.

But passing that, and regarding the application as limited to the removal of ashes and light refuse and rubbish from the premises of the petitioners, they insist that they have a legal right that the commissioner remove such matter from their premises. They specifically disclaim any demand that he remove what is called "trade waste." They call our attention particularly to the fact that they "now only ask that the duty of the commissioner be enforced as to ashes and garbage." The answer of the commissioner that he has not refused to remove garbage is conclusive, and, the petitioners being thus limited to an application to compel him to remove from their various department stores the ashes that have accumulated, the only question is whether they have a clear legal right to that specific relief. They claim it under the provisions of the Greater New York charter which relate to the duties of the street cleaning commissioner. The court below refused the writ on the ground that the duties of that official, as defined and prescribed by the charter, are administrative in their character, and necessarily such as involve the exercise of wide discretion in their performance. Mandamus will not lie to correct abuse in administrative acts (Matter of Croker, 78 App. Div. 184, 79 N. Y. Supp. 640), or to compel an act requiring discretion, or to review such an act (People ex rel. Wooster v. Maher, 141 N. Y. 337, 36 N. E. 396; People ex rel. Demarest v. Fairchild, 67 N. Y. 334). The right of the relators to have ashes or other material removed from their premises accrues to them only by virtue of the municipality, under the laws of the state, assuming to discharge a duty which otherwise would repose upon the citizens themselves. "The burden of removing the ashes, if the owner does not wish them to remain longer on his property, is primarily just as much his personal obligation as it was to bring to his premises, in the first instance, the coal from the burning of which the ashes proceeded." Cullen, J., in Quill v. The Mayor, 36 App. Div. 476, 55 N. Y. Supp. 889. But the city having assumed the duty, and the commissioner of street cleaning being charged with the performance of that duty, a purely arbitrary discrimination made in favor of some and against other inhabitants would not be tolerated. One citizen has as much right to the performance of the public service as another, but where, from the existence of conditions which are undisputed, all cannot be served, it is evident that a necessary and unavoidable discrimination in the performance of duty must be made; and in making it the street cleaning commissioner is obliged to exercise his own discretion. The duties imposed upon him by the provisions of the Greater New York charter are

multifarious. By section 534 (page 239) of that charter, he has control of the sweeping and cleaning of the streets of the boroughs of Manhattan, the Bronx, and Brooklyn; the removal or other disposition, as often as the public health and the use of the streets may require, of ashes, street sweepings, garbage, and other light refuse and rubbish; and the removal of snow and ice from leading thoroughfares, and from such other streets within the said boroughs as may be found practicable. To accomplish all the purposes of these requirements, there is appropriated annually by the board of estimate and apportionment a certain sum of money. The street cleaning commissioner is prohibited by law from making expenditures exceeding that amount. Section 1542 of the Greater New York charter. The plant of the department, as the affidavit of the commissioner shows, is insufficient to enable him to perform all these duties, including the removal of ashes and rubbish from every house and every store and every factory in the boroughs of Manhattan and the Bronx. He shows that the department is absolutely unable, with its present equipment, to do so, and his appropriation was insufficient to provide the necessary facilities for the performance of all this work. Under such circumstances, it remained for the commissioner, in the exercise of his best judgment, to determine what should be done in the performance of that work with the facilities at his command, and the appropriation by which he was limited. If he removed the ashes and waste from the great department stores and factories, which are the waste products of a business, leaving them to accumulate in tenement houses and private dwellings, the owners and occupants of those buildings would have the same cause of complaint as that now urged by the relators. The commissioner was confronted with a condition not of his creation, and over which he could exercise no other control than that of the exercise of discretion in doing his work. A necessity for discrimination existed, and the exercise of his judgment in that necessity is not a matter to be reviewed or controlled by the courts. We think it was within the power of the commissioner to promulgate the order now complained of. The manner of the performance of work, where arbitrary and unjust and uncalled-for discrimination is not made, but where it is compelled by supreme necessity, is within the discretion of the commissioner.

We are therefore of the opinion that the court below was right in refusing the writ, and that the order appealed from should be affirmed, with $50 costs and disbursements.

O'BRIEN, J., concurs.

LAUGHLIN, J. I concur. I also agree with the rule stated by Presiding Justice VAN BRUNT.

VAN BRUNT, P. J. I concur in the result. I do not think the commissioner is bound to remove trade waste, whether in the form of ashes, garbage, or any other form of refuse matter.

McLAUGHLIN, J., concurs.